## In re Tioga Sick & Beneficial Association

UMSTED, Deputy Attorney General, October 16, 1945.—You advise that Tioga Sick & Beneficial Association with a principal office at Philadelphia, Pa., has applied for a certificate of authority to continue business in Pennsylvania, and inquire if this association comes within the purview of the Act of June 4, 1937, P. L. 1643, and if so, what your duties are with regard to the issuance of the certificate requested.

Tioga Sick & Beneficial Association is a beneficial society incorporated under the Act of April 29, 1874, P. L. 73, on June 8, 1897, by Court of Common Pleas No. 1 of the County of Philadelphia as of no. 1196, March term, 1897, for this purpose:

"To raise a fund by dues and assessments for their mutual benefit, and distribute the same to those entitled thereto for sick and death benefits."

Subsection A(1) of section 1 of the Act of June 4, 1937, P. L. 1643, 40 PS §1101, reads as follows:

"A. The provisions of this act shall apply to the following beneficial societies:

"(1) All beneficial societies incorporated under general or special laws since the thirteenth day of October, one thousand eight hundred and fifty-seven."

It is obvious that this society comes within the provisions of the Act of 1937 unless it falls within the exemptions specified in section 13 of that law, 40 PS §1113, as follows:

"Provisions of this act shall not apply to—

"(1) Beneficial associations which are formed by or for the exclusive benefit of those who, at the time of becoming members of such associations, are engaged in educational work in any department or district of the public school system of the Commonwealth of Pennsylvania, or in any college or university therein, and which issues beneficiary certificates only to such members.

"(2) Fraternal, charitable or secret societies issuing beneficial certificates and paying benefits to their membership through the lodge system.

"(3)' Insurance or relief associations formed by or for the exclusive benefit of employes of corporations or firms, or formed by or for the exclusive benefit of members of any religious corporation or association.

"(4) Associations whose benefits are limited to post-mortem assessments of the members."

Although the purpose of the Tioga Sick & Beneficial Association, as expressed in its charter, is exceedingly broad, it does not meet any of the qualifications for exemption from the scope of the act above enumerated. Its members do not appear to be those engaged in educational work nor is it a fraternal, charitable, or secret society having a lodge system. It is not an insurance relief association for employes or for members of a religious corporation. Its benefits are not limited to post-mortem assessments of the members.

You indicate that an investigation of a number of associations, including the one whose problem is before us, which are doing business in Pennsylvania, discloses that policies or benefit certificates are not issued but benefits are made payable in accordance with the bylaws of such associations, which may be amended from time to time. In general, it was developed that these bylaws provide for the payment of specified amounts upon the occurrence of death, sickness, or disability, either in a lump sum or over fixed periods

of time, and in some instances the payment of benefits is conditioned upon the status of the treasury or assessment of members.

It thus appears that many beneficial associations, including the Tioga Sick & Beneficial Associations, are not conducting business in accordance with section 2 of the Act of 1937, which provides for contracts to pay benefits; with section 5 of this act, which specifies the reserves which are to be maintained; section 7, which requires annual reports; or section 9, which makes mandatory the filing of policies, contracts, and certificates with the Insurance Commissioner and his approval thereof. And the question, therefore, arises as to whether in view of their methods of doing business, these beneficial societies are required to meet the provisions of the Act of 1937 and, if so, when.

The purpose of the Beneficial Societies Act of 1937 is to afford supervision of the activities of those societies by the Insurance Commissioner for the adequate protection of members and the public. The provisions of section 9 that "No policy, contract or certificate of membership shall be issued or delivered by any beneficial society in this Commonwealth, nor applications, riders or endorsements used in connection therewith, until the forms of the same have been submitted to, and formally approved by, the Insurance Commissioner under such reasonable rules and regulations as he shall make concerning the terms and provisions contained in such policies, contracts or certificates of membership, and their submission to and approval by him", read with the provisions of section 2 that "Any beneficial society may pay or enter into contracts to pay money or benefits, not exceeding twenty dollars ($20) per week, in the event of sickness, accident or disability, and not exceeding two hundred and fifty dollars ($250), in the event of death", indicate that the word "may" as used in section 2 must be construed as mandatory insofar as written contracts are concerned, although permis-

sive, as to the amount of benefits up to the maximums specified. Otherwise, the whole purpose of the law would be negatived, and the presumption that the legislature does not intend a result that is absurd, rebutted: McGregor Estate, to use, v. Young Township, 350 Pa. 93 (1944); Brown's Appeal, 347 Pa. 418 (1943), 320 U. S. 782. See cases cited at Vale, Pennsylvania Digest Statutes, Key 174.

Having concluded that all beneficial societies in Pennsylvania incorporated since October 13, 1857, are, unless specifically exempted by section 13, within the purview of the Act of June 4, 1937, P. L. 1643, and that under that law they are required to do business in conformity therewith insofar as amounts, reports and written contracts, policies, or certificates of membership are concerned, we now come to the question of when this compliance must be made. This brings us to subsection B of section 1 of that act. It reads as follows:

"B. Any beneficial society heretofore incorporated as aforesaid, and now actually conducting business, *may continue such business* pending the issuance of a certificate of authority by the Insurance Commissioner, or until notified by the Insurance Commissioner that he has declined to issue such certificate of authority." (Italics supplied.)

This provision is obviously designed to permit beneficial societies coming under the act such reasonable time as the Insurance Commissioner may determine requisite for transition from the method of doing business employed before the Act of 1937 to the method required by the Act of 1937. In other words, the issuance of a certificate by the Insurance Commissioner to do business fixes the date when the provisions of the Act of 1937 shall become applicable to the particular beneficial society concerned. We fail to see how, giving the emphasized portion of subsection B its full significance, the whole subsection can be otherwise interpreted.

If within a reasonable time after 1937 a beneficial society has not reorganized its business to comply with the terms of the Act of 1937, then it would seem the Insurance Commissioner might reasonably issue his notification that he has declined to issue a certificate of authority. By a like token, if the beneficial society has brought itself in conformity with the provisions of the Act of 1937, the Insurance Commissioner might well issue a certificate of authority. For him to do neither is justified if reasonable time and opportunity have not been afforded for reorganization, in compliance with the provisions of the act. What is a reasonable time, however, is a matter which has been left by the legislature to the discretion of the Insurance Commissioner—a matter which is administrative in the Insurance Department and upon which the Department of Justice is not called to pass.

It must be borne in mind, however, that subsection B of section 1 only extends the life of the beneficial associations which in 1937 were "actually conducting business", and only as to the types of business those associations were doing on that date. If investigation reveals that a beneficial association was not actually conducting business in 1937, such fact would in itself justify the Insurance Commissioner in refusing to issue his certificate of authority. Or if for a period of two consecutive years after the effective date of the 1937 law a beneficial association wrote no policies of insurance or contracts or issued no certificates of membership, this also would be ground for refusing to authorize that corporation to do business in Pennsylvania.

Subsection D of section 3 of the Act of 1937 reads as follows:

"Except as otherwise provided in this act, the business and affairs of every beneficial society shall be run and regulated in accordance with the provisions provided by existing law relating to insurance companies."

There is no provision in the Act of 1937 regarding the consequences of failure for a period of time to issue policies of insurance or other contracts for benefits. And we must therefore, as directed by the 1937 act, look to existing law relating to insurance companies to determine the consequences of such inactivity.

Section 339 of the Insurance Company Law of May 17, 1921, P. L. 682, 40 PS §461, makes the following provision:

". . . if any insurance company shall cease for two years to make new insurances, its corporate powers and existence shall cease . . .".

The inescapable conclusion follows that a beneficial association like an insurance company may not, if it would continue its existence, fail to write insurances for a period of two years.

An application of the foregoing principles to the specific question which you ask concerning the Tioga Sick & Beneficial Association brings us to the following conclusion.

We are of the opinion, and you are accordingly advised:

1. The Tioga Sick & Beneficial Association of Philadelphia, Pa., is a beneficial society within the meaning of the Act of June 4, 1937, P. L. 1643, 40 PS §1101 et seq.

2. The issuance of a certificate of authority to do business in Pennsylvania to this association by the Insurance Commissioner or his declination to issue such a certificate is discretionary with the Insurance Commissioner, contingent upon whether the association is complying or is in a position to comply with all the provisions of that act and particularly those regarding the approval and issuance of written contracts or policies for benefits or certificates of membership.

3. If, however, the Tioga Sick & Beneficial Association was not actually conducting business in 1937, or for a period of two consecutive years after 1937 failed

to issue policies of insurance, contracts or other forms of benefit agreements, those facts in themselves would furnish ample justification to the Insurance Commissioner upon which to predicate a refusal to authorize that corporation to do business.